UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SANTOS PERFECTO NAJERA,

Petitioner,

v.

BRUCE SCOTT, et al.,

Respondents.

Case No. 2:26-cv-03611-TLF

ORDER GRANTING HABEAS PETITION

Petitioner Santos Perfecto Najera is currently detained by the United States Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1 (Petition); Dkt. 7 (Deportation Officer ("DO") Declaration).

Petitioner seeks release, challenging an Immigration Judge's ("IJ") decision to deny bond after finding petitioner was a flight risk. *E.g.*, Dkt. 1 at 17-18. Petitioner argues the IJ's decision was an abuse of discretion in finding he was a flight risk, and that continued detention on that improper basis violates his Fifth Amendment right to due process. *E.g.*, Dkt. 1 at 17-18.

The parties unanimously consent to the jurisdiction of a Magistrate Judge. Dkt. 4. For the reasons below, the Court **GRANTS** the habeas petition and **ORDERS** respondents to immediately release petitioner **within 24 hours** of the filing of this Order.

## I. BACKGROUND

Petitioner is a citizen of Mexico. Dkt. 1 at 2; Dkt. 1-4 (passport); Dkt. 7 at 2. Petitioner states he last entered the United States in May 2006. Dkt. 1 at 6.

Petitioner states he first encountered immigration officials on August 27, 2026, when respondents detained him after conducting a traffic stop. Dkt. 1 at 6-7. Respondents state that on July 29, 2026, they "identified Petitioner as a citizen and national of Mexico who had illegally entered the United States" and "initiated an investigation to locate and apprehend Petitioner," culminating in the traffic stop on August 27, 2026. Dkt. 7 at 2-3.

On September 16, 2026, the IJ conducted a a bond hearing. Dkt. 1 at 7; Dkt. 7 at 3. Petitioner was represented by counsel. Dkts. 2, 9 at 00:30 through 00:45.[1]

Petitioner submitted over 300 pages of documents. Dkts. 1-5, 1-6, 1-7. For example, these included birth certificates for petitioner's four U.S. citizen children (Dkt. 1-5 at 5-12), medical records concerning his partner's pregnancy (Dkt. 1-5 at 3, 13), documents (such as a lease, electricity bill, vehicle titles) to attest to his address in Washington State (Dkt. 1-5 at 21, 29, 31), various tax documents dating from 2011 (Dkt. 1-5 at 35-148; Dkt. 1-6 at 4-104), sponsorship letters and paystubs from his employer where he worked for 12 years seasonally, but full time for the past six years (*e.g*, Dkt. 1-6 at 105; Dkt. 1-7 at 4).

At the hearing, petitioner also asserted his six-year-old daughter has "developmental delay and speech delay." Dkts. 2, 9 at 4:55 through 5:10. Petitioner also asserted he is attempting to obtain immigration relief, including (1) asserting a hardship

[1] The parties each submitted recordings of the approximately 26-minute bond hearing. Dkts. 2, 9.

due to "qualifying family members" such as his six-year-old daughter, and (2) "exploring" asylum or other relief under I-589. Dkts. 2, 9 at 7:50 through 8:40.

The IJ noted the record was missing tax documents from some years, such as 2013, 2014, and 2017, and asked for medical records concerning petitioner's daughter's conditions. Dkts. 2, 9 at 15:00 through 15:25, 16:45 through 17:00. Petitioner's counsel explained petitioner's partner had difficulties obtaining some documents as she is "pretty illiterate." Dkt. 2, 9 at 15:25 through 15:35, 17:00 through 17:20.

The government submitted no documentary evidence for the hearing. Dkts. 2, 9 at 16:10 through 16:45.

The IJ ultimately denied bond, finding petitioner was a flight risk, but not a danger to the community. Dkt. 1-2; Dkt. 8-1 (IJ Order). At the hearing, the IJ explained his flight risk finding as follows:

> However, in considering his possible—one of the *Guerra* factors is to consider relatives and the possible relief he could obtain through relatives.
>
> While it's true that he's been present in the United States for a number of years, and he has a residence, and he has four children, he—it appears he could only potentially obtain relief through evidence of the six-year-old's health problems. But that evidence has not been presented.
>
> And although there could potentially be some sort of relief through I-589 application, that has not been explored with [petitioner].
>
> Given the fact that [petitioner] has been in the country as long as he has, since at least—I believe it was 2012, and has never taken any steps to try and resolve his immigration situation, he does present a substantial flight risk.
>
> And he hasn't met his burden to show that he is not a substantial flight risk. Because essentially the only thing that has been provided are tax returns, a letter from his employer/sponsor, and some electric bills, and a vehicle title—two vehicle titles, and proof that his partner is pregnant, again, as well as a lease . . . and pay stubs . . .

Dkt. 2, 9 at 19:50 through 24:30 (interpreter portions omitted).

## II. DISCUSSION

### A. Jurisdiction

Under 8 U.S.C. § 1226(e), the "Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." *See Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) ("In other words, custody determinations within the discretion of the Attorney General are not subject to judicial review.").

"That provision does not, however, preclude 'habeas jurisdiction over constitutional claims or questions of law.'" *Hernandez*, 872 F.3d at 987 (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)). "'[C]laims that the discretionary [bond] process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241.'" *Id.* (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011), *abrogated on other grounds as stated in Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1210-11 (9th Cir. 2022)).

Here, petitioner's abuse of discretion claim is not "challenging the IJ's discretionary judgment, but is instead challenging 'whether the IJ provided him with a bond hearing that comports with the constitutional due process protections to which he is entitled.'" *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1078 (W.D. Wash. 2026) (quoting *W.T.M. v. Bondi*, No. 2:25-CV 02428-RAJ-BAT, 2026 WL 262583, at *1 (W.D. Wash. Jan. 30, 2026)).

This Court thus has jurisdiction to hear petitioner's challenge of his bond hearing.

**B. Exhaustion**

As another preliminary matter, the parties dispute whether petitioner should be required to exhaust his administrative remedies before pursuing his habeas petition. Dkts. 1, 6, 10.

"In the immigration habeas context, administrative exhaustion is prudential, not jurisdictional." *Vazquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1100 (W.D. Wash. 2026). This Court has discretion to waive this prudential requirement. *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004).

"Prudential exhaustion is ordinarily required when (i) agency expertise necessitates agency consideration to generate a proper record and decision, (ii) excusing a party from exhausting administrative remedies would encourage the 'deliberate bypass' of the administrative scheme; and (iii) administrative exhaustion would likely allow the agency to correct its own mistakes and alleviate the need for judicial review." *Vazquez Lopez*, 830 F. Supp. 3d at 1100 (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).

"Nonetheless, even if the three Puga factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez*, 872 F.3d at 988 (quoting *Laing*, 370 F.3d at 1000).

Here, the first Puga factor weighs against requiring prudential exhaustion. "[T]he facts in this case are undisputed and the actual issue is whether, as a matter of law, the undisputed evidence presented at the bond hearing could establish that Petitioner

posed a flight risk." *Soriano*, 830 F. Supp. 3d at 1079. "Thus, the BIA's 'expertise' in immigration bond decisions is unnecessary to generate a proper record or reach a proper decision." *Id.*

The second Puga factor is neutral on whether to require prudential exhaustion. "Although relaxation of prudential exhaustion could encourage . . . others to bypass the administrative appellate procedure . . . there also is some value in identifying specific circumstances under which, as a matter of law, a finding of flight risk is untenable." *Id.*

The third Puga factor weighs against requiring prudential exhaustion. "Where the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error." *Id.* "Moreover, given the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim." *Id.*

Even if the above Puga factors favored requiring exhaustion, waiver would still be appropriate under *Laing* for reasons similar to those discussed in *Perez Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 WL 1042479, at *3-*4 (S.D. Cal. Apr. 16, 2026).

**C. Abuse of Discretion**

Petitioner argues the IJ's decision was an abuse of discretion in finding petitioner was a flight risk. *E.g.*, Dkt. 1 at 9.

Immigration detention is civil, not criminal, and it "is permissible only to prevent flight or reduce the risk of danger to the community." *Meneses v. Santacruz*, 811 F.

Supp. 3d 1158, 1164 (C.D. Cal. 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 690-691 (2001)).

“When questions require a close review of agency-found facts, like the ‘dangerousness’” or flight risk “determination, we review for an abuse of discretion.” *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024); *Vasquez Lopez*, 830 F. Supp. 3d at 1100 (clarifying *Martinez* also applies to flight risk determinations).

“When examining any evidentiary proceeding and the adjudicator's opinion, there are at least two ways to challenge whether the adjudicator applied the correct standard of proof.” *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019). “First, a challenge may be based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion.” Id. “Second, it may be clear from the adjudicator's opinion itself that he simply did not apply the correct standard to the facts.” *Id.* Under either basis, this Court “may only determine whether the IJ applied the correct legal standard, not reweigh evidence.” *Soriano*, 830 F. Supp. 3d at 1080.

Here, petitioner argues the IJ improperly “concluded that [petitioner] was a flight risk because of” (1) “the lack of evidence of [his] 6-year-old daughter’s developmental and speech delay and” (2) petitioner’s “alleged inaction regarding his immigration status.” Dkt. 1 at 8.

First, the IJ asserted the apparent difficulty for petitioner to obtain relief from removal. The IJ cited how “one of the *Guerra* factors” which “consider[s] relatives and the possible relief he could obtain through relatives.” Dkts. 2, 9. The IJ elaborated that “it appears he could only potentially obtain relief through evidence of the six-year-old’s

health problems. But that evidence has not been presented." Dkts. 2, 9. "And although there could potentially be some sort of relief through I-589 application, that has not been explored with [petitioner]." Dkts. 2, 9.

While the Board of Immigration Appeals "has identified that an IJ 'may consider the likelihood that relief from removal,'" such reliance is improper when "the IJ did not explain how the relative strengths or weaknesses of Petitioner's claims for relief outweighed the specific circumstances presented in this case." *Soriano*, 830 F. Supp. 3d at 1081 (quoting *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (BIA 2020)); *see also Abdelmasseh v. Scott*, No. C26-1681-KKE, 2026 WL 1815279, at *4 (W.D. Wash. Jun. 24, 2026) (citation omitted) ("'[A]ll unresolved claims for immigration relief are, by definition, 'speculative,' but that does not mean a noncitizen cannot be trusted to appear for future court proceedings on that basis alone.'").

Here, the IJ referenced one *Guerra* factor and briefly listed the evidence submitted by petitioner, yet he did not take the necessary step of substantively explaining how the above considerations weighed against petitioner's offered evidence. *E.g.*, *Soriano*, 830 F. Supp. 3d at 1081 (holding that while an IJ may consider likelihood of removal and the IJ generally noted petitioner's "'equities in the United States,'" the IJ did not further explain "why it should be concluded that under these circumstances Petitioner would try to flee rather than appear in immigration court"); *see also Singh v. Warden*, No. 1:26-cv-01973-DAD-CSK, 2026 WL 1328588, at *7 (E.D. Cal. May 13, 2016) (holding "mere recitation" of a legal standard or authority is insufficient to demonstrate compliance).

Second, the IJ asserted that despite petitioner being in the United States for many years, he "has never taken any steps to try and resolve his immigration situation . . ." Dkts. 2, 9.

A petitioner's purported inaction regarding their immigration status is not relevant evidence showing risk of flight. *Zavala Sandoval v. Hernandez*, No. 2:26-cv-01198-JNW, 2026 WL 1661379, at *4-*5 (W.D. Wash. Jun 9. 2026) ("Nor does the IJ explain how Zavala Sandoval's failure to apply for immigration status after spending years living in the country makes him a flight risk."). "[E]ven assuming that [petitioner] may have been eligible for some other form of immigration relief such as a visa, the IJ does not explain what that relief would be and why his failure to apply for such relief would make him a flight risk today." *Id.*, at *5.

For the reasons above, the Court finds the IJ abused his discretion when denying bond.

**D. Remedy**

Federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005); *Soriano*, 830 F Supp. 3d at 1081-82.

This Court declines respondent's request to impose a stay to permit the IJ to issue a written bond memorandum. Dkt. 6 at 11. *E.g.*, *Ascencio-Zetino v. Scott*, No. 2:26-cv-02856-DGE, 2026 WL 2686835, at *5 (W.D. Wash. Sept. 14, 2026) (addressing a similar request).

Under the circumstances, the Court finds no basis for petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is

the appropriate remedy. *Soriano*, 830 F. Supp. 3d at 1081-82; *see also Garcia v. Hyde*, 817 F. Supp. 3d 112, 131, (D.R.I. Dec. 3, 2025) (ordering habeas petitioner's immediate release from custody “[g]iven the due process violations that pervaded his bond hearing”)).

## III. CONCLUSION

For the reasons above, the Court **GRANTS** the petition for a writ of habeas corpus and **ORDERS:**

**(1)** Respondents shall immediately release petitioner from immigration custody **within 24 hours** of the filing of this Order.

**(2)** Respondents shall release petitioner under reasonable conditions of release.

**(3)** At the time of release, respondents shall return to petitioner any personal property, including personal identification documents and employment authorization documents.

**(4)** Respondents shall file a certification with this Court confirming the date and time petitioner was released **within two business days** of the filing of this Order.

**(5)** The Court will consider an appropriate post-judgment motion for attorney’s fees.

Dated this 23rd day of October, 2026.

Theresa L. Fricke
United States Magistrate Judge